**Eddie Lee HILL, Plaintiff,**

v.

**FLOTA MERCANTE GRANCOLOM-
BIANA, S. A., Defendant.**

**No. 6109.**

United States District Court
E. D. Louisiana,
New Orleans Division.

May 9, 1967.

Richard J. Garrett, Clifton S. Carl, New Orleans, La., for plaintiff.

M. D. Yager, New Orleans, La., for defendant.

John R. Peters, Jr., New Orleans, La., for New Orleans Stevedoring Co., Impleaded and Travelers Ins. Co., Intervenor.

RUBIN, District Judge.

Eddie Lee Hill, a longshoreman who stands 5 feet 11 inches tall, and weighs 250 pounds, hurt his knee while

descending a ladder through a hatch opening. There was nothing wrong with the ladder. The opening was larger than the standard size. Nonetheless, Hill says the vessel was unseaworthy, and his lawyer puts his case with commendable candor: The hatch itself was not too small. But, he contends, Hill was too large to use the hatch safely. Hiring longshoremen too big for the available hatch renders a vessel unseaworthy, he says. Albeit ingenious, that's a thin argument but, even so, there's no opening in the jurisprudence wide enough to squeeze it through. At least when the hatch openings are bigger than the standard size, they don't render a vessel unseaworthy even for stout longshoremen.

The factual background may be sketched briefly. The Republica del Equador is a C1–M–AV1 type vessel. It arrived in New Orleans in the early afternoon of June 5, 1963, and cargo operations began shortly after docking. The next day Hill was descending the fixed ship's ladder from the weather deck into one of the 'tween decks. His foot slipped and he bumped his right knee. The ladder was in good condition, and there was no oil, grease, or other foreign substance on it. Hill and his fellow longshoremen had used ladders of identical construction on similar type vessels on a number of occasions before the accident, and had never complained about the ladder or asked for alternate means to enter the cargo spaces. Both Hill and the shipowner called witnesses expert in the field of naval architecture, and the witnesses on both sides testified that oval hatches having dimensions of 15 inches by 23 inches are standard, and widely used. The dimensions of the hatch in question were 17 inches by 25 inches. After his injury, Hill was off work for 25 weeks, and he was paid $70 a week in compensation, together with $945.55 in medical expense under the Longshoremen's and Harbor Workers' Compensation Act.[1]

Hill sued the shipowner on the basis that "the owner failed to provide [Hill] with a safe place to work; failed to provide safe ingress and egress to the cargo area; failed to provide proper safety devices; failed to provide adequate supervision of activities and working conditions."

The shipowner filed a third-party complaint against the stevedore.

It is of course true that it is the obligation of the shipowner to provide at least one safe and accessible ladder for each gang working in a hatch,[2] but the ladder provided here was safe and accessible. There were ten hold men working the hatch in question. Six of them were men of substantial girth, although none was larger than Hill. Hill and two of the other longshoremen testified that they had some difficulty getting into a hatch such as the one involved here. Nonetheless, all of them had used this hatch opening, or like hatch openings on similar vessels, without trouble, and they all continued to use the same hatch opening and the same ladder without problems after Hill was hurt.

A big, heavy man must obviously use more care in descending a ladder than a small agile man. A basketball player 6 feet 11 inches tall must lower his head when going through doorways. This does not mean that every hatch must be provided with alternate ladders, or every door made as tall as a steeple. The hatch opening was big enough and safe enough to make the vessel seaworthy. It is hornbook law that the owner of the vessel is not required to provide an accident free ship, but only one reasonably fit for its intended use. "The standard is not perfection."[3]

1. 33 U.S.C.A. § 901 et seq.

2. Safety and Health Regulations for Longshoring, 29 C.F.R. § 1504.25(a).

3. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941;

Boudoin v. Lykes Bros. SS Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; and Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297.

But counsel urges that Hill was his own unseaworthy condition. He was himself unfit for the operation at hand unless a Jacob's ladder or some other means of descending into the hatch was provided. But it's a far stretch (and worse than a tight squeeze) to reach this result reasoning by analogy, from the rule that a ship is unseaworthy if it puts to sea with an incompetent master or an untrained or fever-ridden crew.[4] There is no justification to extend Judge Hand's famous standard for measuring the seaworthiness of personnel by requiring the owner to warrant that the seaman is not only equal in disposition and seamanship, but no larger in girth, than ordinary men in the calling.[5] But this is indeed plaintiff's contention because he asserts that the longshore gang was "improper" for this ship because its men were too big for the hatch.

In Holmes v. Mississippi Shipping Co., 5 Cir., 1962, 301 F.2d 474, the Fifth Circuit Court of Appeals held that a seaman is not entitled to recover damages for injuries caused by unseaworthiness of his former vessel if the seaman himself constituted the unseaworthiness. In discussing the case of the mentally disturbed seaman who sought to recover from the shipowner when he cut off his own hand, the court stated that recovery cannot be had by a seaman injured solely by his own negligent, or his own irresponsible, act.[6]

The plaintiff relies upon Admiral Towing Company v. Woolen, 9 Cir., 1961, 290 F.2d 641, which involved the disappearance of a tug at sea. The owner had employed an agent to bring the tug from San Francisco to Astoria, Oregon. The agent was to take on a crewman, but, without the owner's knowledge, he employed an inexperienced seventeen year old school boy for the job. The Court held that the trial court was justified in finding that the vessel was unseaworthy because the owner failed to supply an adequate and competent crew; and the owner was therefore liable for the boy's death. In a sense it can be said that the court found that the inexperienced hand was himself the unseaworthy condition. But that is not the true meaning of the decision. What the case holds is that a vessel equipped with an incompetent crew is unseaworthy. There is an inherent defect in the crew that violates the owner's warranty. It is interesting to note further, however, in connection with the *Admiral Towing* case that the law has always imposed a special obligation on those dealing with persons whom they know to be incompetent or inexperienced to exercise a greater degree of care towards them.[7] This is, in general, a rule of tort law, not of unseaworthiness, but the principle would appear to be applicable in determining whether the owner of a vessel had discharged his duty to provide a competent crew.

---

4. Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515, cert. denied 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363, 1952. See also Gilmore & Black, The Law of Admiralty, 329.

5. The criterion stated by Justice Learned Hand has since become standard. He said "Applied to a seaman, such a warranty [seaworthiness] is, not that a seaman is competent to meet all contingencies; but that he is equal in disposition and seamanship to the ordinary men in the calling." Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515, cert. denied 343 U.S. 966, 72 S.Ct. 1061, 96 L. Ed. 1363, 1952.

6. A different view was taken in Holley v. The S.S. Manfred Stanfield, E.D.Va.,

1960, 186 F.Supp. 212. The Fifth Circuit Court said that the true "and contrary" rule is set forth in Cavelleri v. Isthmian Lines, Inc., S.D.N.Y., 1961, 190 F.Supp. 801. Donovan v. Esso Shipping Co., 3 Cir., 1958, 259 F.2d 65 and Williams v. The S.S. Richard De Larrinaga, 4 Cir., 1961, 287 F.2d 732.

7. See Restatement, Torts, § 290, Comment k. (2d Ed.1965); Prosser, Law of Torts, § 33, at 175 (3rd Ed.1964); 38 Am.Jur. Negligence § 36, at 683 (1941):
   "It is a principle of law, as well as of natural justice, that greater consideration and care are due to persons known to be unable to take care of themselves than to those who are fully able to do so."

There is no occasion to apply the *Admiral Towing Company* decision here. Physically and mentally, Eddie Lee Hill was equipped for his job—indeed he urges that he was over-equipped. There was no defect in the vessel or its crew. He should not be permitted to recover for unseaworthiness.

## INDEMNITY

The shipowner asserts that the stevedore owes it the costs of its defense including reasonable attorney's fees. The stevedore argues that the plaintiff's original claim did not indicate that the stevedore breached any duty to perform in a workmanlike manner, that a call for indemnity and demand to defend must be appraised by the appearance of things before the case is tried, and that the stevedore did indeed perform its contract in a workmanlike manner.[8]

To justify its position, the stevedore seizes upon language in Strachan Shipping Co. v. Koninklyke Nederlandsche, S.M.N.V., 5 Cir., 1963, 324 F.2d 746 that, "The plaintiff's suit was not completely without merit. It must be appraised to some extent, at least, by the appearance of things before the case was tried." But that language refers to the basis for imposing the costs of the owner's defense on the stevedore when the owner had to defend the longshoreman's suit because, even though it was without ultimate merit, it appeared from the complaint that liability might result. The language cannot be turned around to make it imply that the owner's right to indemnity must be determined on the face of the pleadings.

In Massa v. C. A. Venezuelan Navigacion, 2 Cir., 1961, 332 F.2d 779, the stevedore was required to indemnify the owner for the cost of defense when a longshoreman was injured by cargo spilling on him from a pallet. The complaint against the shipowner based on unseaworthiness was dismissed; but the stevedore was nonetheless liable to the owner.[9]

The court reasoned:

"* * * There is no question that the stevedore breached its warranty to perform in a workmanlike manner, for the trial court found that the cause of the accident was the negligence of the stevedore's employees. This negligence rendered the shipowner liable to suit, and we see no good reason for forcing the shipowner to bear the expenses of successfully defending the suit when the stevedore would have to bear the shipowner's expense of unsuccessfully defending the suit."

The stevedore's duty to perform its contract with the owner in a workmanlike manner, implied in law, requires the stevedore to indemnify the owner against all loss occasioned as a result of the stevedore's failure to perform its duties in a safe and workmanlike manner.[10]

8. Ryan Stevedoring Co. v. Pan Atlantic SS Co., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

9. Massa v. C.A. Venezuelan Navigacion, 2 Cir., 1964, 332 F.2d 779, cert. denied 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186. See in accord Guarracino v. Luckenbach Steamship Co., Inc., 2 Cir., 1964, 333 F.2d 646, cert. denied, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543, in which the court said: "Recovery over may be had even if the shipowner is exonerated from fault or unseaworthiness. * * * Potential liability is sufficient. * * * This rule would apply even if the unsafe conduct was that of the injured longshoreman alone. * * * This is as it should be, for it is the stevedore, in direct control of the hatch boss and the worker, who can best avoid the injury and expense by insistence on observance of safety precautions." D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341; United States Lines Company v. Williams, 5 Cir., 1966, 365 F.2d 332; Lusich v. Bloomfield Steamship Co., 5 Cir., 1966, 355 F.2d 770.

10. See to the contrary Arista Cia. DeVapores, S.A. v. Howard Terminal, N.D. Calif., 1965, 247 F.Supp. 710, in which the court said: "Does it follow that the Stevedore, equally without fault, must reimburse the shipowner for damage done by its employee in the form of attorney's fees reasonably expended by the Shipowner in defending against a personal injury suit in which it is found that the injury

■■ Eddie Lee Hill's suit is groundless. But someone must bear the costs of its defense. Either the owner must bear its own expense, simply because it was sued, without sound reason, by the stevedore's employee, or the stevedore must make the owner whole. The cost arose directly from the stevedore's operation, and the claim arose from its own employee, who was injured by his own negligence. His injury was not occasioned by the negligence of either the shipowner or the stevedore. At the time of trial his claim had narrowed to the contention that he was too big for the hatch opening. If anyone could have guarded at all against the claim, it was the stevedore who hired him. In addition the cost of this type of suit appears at the present to be an inevitable economic consequence of the stevedoring operation. The stevedore can best handle it as part of the economic burden of its operations passing it along as it does other costs. Finally, we should not disregard the ancient legal principle that urges that, when an expense must be borne by one of two innocent parties, it should be placed on the one whose act permitted the loss to occur.[11] For these reasons, as between owner and stevedore, the loss should fall on the stevedore.

For the reasons stated judgment will be entered dismissing the plaintiff's claim, but in favor of the defendant against the third-party defendant for indemnity. If the amount due as indemnity cannot be agreed upon by the parties, that issue will be tried separately. The Clerk will prepare and enter a judgment accordingly.

was caused solely by the workman's own carelessness? This court holds that it does not. * * * In the case here presented, the damage to the Shipowner is done, not on the vessel, but in the process of litigation where the workman is acting as his own agent free of the Stevedore's control. Unlike the situation in Damanti v. A/S Inger, supra [2 Cir., 314 F.2d 395], (where there was evidence of unseaworthiness) and Guarracino v. Luckenbach Steamship Co., supra (where the supervisor had abandoned his post) the injured workman in this case came to court as a result of his own folly. Therefore, the Shipowner (like all other property owners) must accept the burden of defending himself against unmeritorious claims of workmen invited on his premises and cannot look to the Stevedore for reimbursement. If the court were to decide otherwise, undue pressure might be put on longshoremen by their employers to accept compensation rather than sue the Shipowner and run the risk of incurring legal defense fees which the Stevedore company or Contractor would ultimately have to pay. Such a result was not the aim of the Longshoremen's and Harbor Workers' Compensation Act."

11. 2 Pomeroy, Equity Jurisprudence § 363, at 9.