Manuel DIAZ, Plaintiff,

v.

WESTERN VENTURES, INC., etc., De-
fendant-Third-Party Plaintiff-
Appellant,

v.

DADE DRYDOCK CORPORATION, etc.,
Third-Party Defendant-Appellee.

No. 71-3458.

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1972.

———◆———

William C. Lewis, Jr., Miami, Fla., for appellant.

Jesse W. Miller, Miami, Fla., for appellee.

John H. Lewis, Miami, Fla., for plaintiff Diaz.

Before WISDOM and INGRAHAM, Circuit Judges, and BOOTLE, District Judge.

INGRAHAM, Circuit Judge:

Plaintiff Manuel Diaz sued defendant shipowner, Western Ventures, Inc., for personal injury and lost income. The defendant filed a third party action over and against plaintiff's employer, Dade Drydock Corporation, for indemnity. The case was tried to the court without a jury.

Diaz, a ship repairman, sustained injuries aboard a vessel undergoing repairs in Dade's drydock compound. Believing that he had been aboard the M/V Western Venturer when he slipped on a piece of loose pipe in a darkened engine steering room doorway, Diaz initiated this action against Western Ventures as owner. Suing in admiralty, Diaz claims that the vessel was unseaworthy and Western Ventures was negligent in failing to provide a safe place to carry out seamen's work. As expected Western Ventures denied the allegations and filed suit for indemnification against Dade Drydock, alleging a breach of Dade's warranty of workmanlike performance.

We quote the following from the findings of the district court:

"     .     .     .     On cross-examination the Plaintiff admitted that he did not know the name of the vessel on which he fell but his supervisor told him the name of the vessel. He testified as to various details of the appearance of the vessel but was unable to recognize photographs of the engine steering room of the sister ship of the M/V 'Western Venturer,' which vessel was identical to the 'Western Venturer,' according to Earl Truesdell, the Defendant's Port Representative.

"Steve Gallechio, the Plaintiff's supervisor at the time in question, testified that he didn't know the name of the vessel on which the Plaintiff fell and John Albrecht testified that he did not witness Plaintiff's injury nor did he help the Plaintiff out of the engine steering room after the fall. Earl Truesdell, the Defendant's Port Representative, testified as to various details of the 'Western Venturer'

which did not to any extent coincide with Plaintiff's description of the vessel upon which he was injured. Truesdell further testified that he was in the engine steering room on the day prior to the alleged accident and the day after the alleged accident and the lights in said room were working.

"The Court finds that it cannot and does not accept Plaintiff's version of the alleged accident as credible and worthy of belief and, accordingly, based upon the entire testimony including that of Truesdell, whose honesty and credibility impressed the Court, the Court finds that the Plaintiff did not sustain any injuries aboard the M/V 'Western Venturer' as alleged and complained of in this litigation."

The district court entered a partial final judgment in accord with his findings and dismissed Diaz's suit. Diaz did not appeal. The court, however, retained "Western Ventures" indemnity action against Dade to determine which party should bear the costs and expenses, including attorney's fees, in the successful defense of the first part of the action.

After reviewing the law of indemnity, the district court noted that a factual determination of Dade's breach of warranty of workmanlike performance had not yet arisen because Diaz had been unsuccessful in proving the threshold issue of injury aboard the M/V Western Venture. Holding that a finding of breach of a warranty of workmanlike performance was a prerequisite to an award of attorney's fees, the district court denied indemnity, 331 F.Supp. 1296. Western Venture appealed. We affirm.

At the outset we are not concerned with those general principles of insurance law regarding wrongful denial of coverage or abrogation of a contractual duty to defend a lawsuit. Liability for a defense's litigation expenses in a *Sieraki-Ryan-Yaka-Italia* [1] case is governed by the same principles as govern the award of indemnity in the general case. Hobart v. Sohio Petroleum Co., 445 F.2d 435 (5th Cir., 1971).

The district court correctly concluded that in such a case indemnity must flow from a breach of a warranty of workmanlike performance. Delaneuville v. Simonsen, 437 F.2d 597 (5th Cir., 1971). As we recently stated in Sandoval v. Mitsui Sempaku K. K. Tokyo, 460 F.2d 1163 (5th Cir., 1972):

"Under the Ryan Doctrine, one who performs maritime services for a shipowner impliedly warrants that he will perform the services in a workmanlike manner. When breach of that obligation renders the vessel unseaworthy and imposes absolute liability on the owner for the consequences of that unseaworthiness, the party must indemnify the shipowner on account of its breach."

If obligated to indemnify by virtue of a breach, the obligation would extend to the litigation expenses of defending this suit. Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2nd Cir., 1964); Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, N. V., 324 F.2d 746 (5th Cir., 1963). But whether an independent contractor has breached his warranty of workmanlike performance is primarily a question for the trier of fact. Delaneuville v. Simonsen, *supra*. Here, both Western Ventures and Dade moved for summary judgment on this issue. The district court's findings support its denial of indemnity and preclude operation of the Strachan Shipping Co. v. Koninklyke, etc., *supra*, principle.

Appellant on appeal raises a "scare" argument. It argues that to presage in-

1. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1948); Ryan Stevedoring Co., Inc. v. Pan-Atlantic SS Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Reed v. SS Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

demnity for defense expenses upon a factual determination that a warranty of workmanlike performance has been breached places a premium on the vessel losing the initial round to the surrogate seaman. Thus it argues a vessel seeking *Ryan* indemnity will confess its unseaworthiness and will endeavor to establish a breach of warranty of workmanlike performance. This argument fails to appreciate that not all injuries to employees of independent contractors result from breaches of a warranty of workmanlike performance, United States Lines Co. v. Williams, 365 F.2d 332 (5th Cir., 1966), or that indemnity is not automatic in cases where the employee has "caused" his own injury. Lusich v. Bloomfield SS Company, 355 F.2d 770 (5th Cir., 1966). Rather the employee's conduct is a factor to be considered in determining the contractor's breach. United States Lines v. Williams, *supra*. Moreover, indemnification for expenses of defense without a finding of a breach of warranty of workmanlike performance converts the independent contractor into an insurer against specious lawsuits filed by his employees. Surely this extends beyond any operational connection between the work to be performed and a breach of a warranty that the work will be performed in a workmanlike manner. It is this latter element which gives rise to indemnification. Nor does Hill v. Flota Mercante Grancolombiana S. A., 267 F.Supp. 380 (E.D., La., 1967), aff'd. per curiam 405 F.2d 878 (5th Cir., 1969), stand for a contrary proposition. There indemnification for expenses of defense was permitted where the employee of the stevedoring company injured himself aboard the Republica del Equador when he tried to squeeze through a hatch opening which was too narrow for him, or, conversely stated, for which he was too big. Though the district court in *Hill* did not state its holding in terms of a breach of warranty of workmanlike performance, implicit in its decision was a finding of sufficient operational connection between the fact of injury and the warranty of workmanlike performance

that a breach could be found. The court stated:

"At the time of trial his claim had narrowed to the contention that he was too big for the hatch opening. If anyone could have guarded at all against the claim, it was the stevedore who hired him."

The judgment of the district court denying indemnification for successful defense expenditures in the absence of a finding of a breached warranty of workmanlike performance is affirmed.