**Henry F. THIBODEAUX, Plaintiff,**

v.

**TEXAS EASTERN TRANSMISSION CORPORATION et al., Defendants-Appellants,**

v.

**J. RAY McDERMOTT & COMPANY et al., Defendants-Appellees.**

No. 75–1960.

United States Court of Appeals, Fifth Circuit.

March 11, 1977.

Rehearing Denied April 21, 1977.

---

Boris F. Navratil, Baton Rouge, La., for defendants-appellants.

John G. Torian, II, Lafayette, La., for McDermott.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES *, District Judge.

AINSWORTH, Circuit Judge:

This is a contest between two corporate parties for indemnity growing out of the payment in settlement of the claim for personal injuries of an employee of one of the parties.

Texas Eastern Transmission Corporation [Texas Eastern] entered into a contract with J. Ray McDermott & Company, Inc. [McDermott] on September 9, 1970, under which McDermott agreed to construct approximately 11.18 miles of pipeline for Texas Eastern in the Gulf of Mexico. Texas Eastern reserved the right in the agreement to inspect McDermott's work.[1] McDermott expressly agreed "to do the work in a workmanlike manner with men skilled in the work assigned to them in strict accordance with the Contract Documents."

On October 13, 1970, while the work was in progress, Henry Thibodeaux, a welding inspector for Texas Eastern, was seriously injured when he tripped and fell over welding hoses aboard the McDermott Lay Barge No. 23. The hoses were attached to acetylene and oxygen bottles. Torches at the end of the hoses were used to ignite a "dope pot" (a container holding a protective asphalt substance used on pipe). At the time of the accident the hoses were not in use but nevertheless had been allowed to remain in the passageway between the dope station and the x-ray station (used in making pictures of the pipe welds). Both the hoses and dope pot were McDermott's equipment and were used by McDermott's crew.

Thibodeaux sued the barge owner, McDermott, alleging that his injury was due to negligence and unseaworthiness, and also sued his employer, Texas Eastern, alleging negligence under the Jones Act (46 U.S.C. § 688). Texas Eastern and McDermott then filed cross-claims against each other for indemnity. The matter proceeded to trial before a jury. At the end of the second trial day, McDermott settled the claims of Thibodeaux against it for the sum of $100,000.[2] Texas Eastern declined to

---

* Senior District Judge for the Northern District of Texas, sitting by designation.

1. The contract reads in pertinent part:
   .120 INSPECTION
     .121 Company [Texas Eastern] contemplates and Contractor [McDermott] hereby agrees to a thorough inspection by The Engineer [Texas Eastern representative] of all the work and materials furnished under the Contract Documents. All work performed by Contractor, and all materials furnished by it hereunder, shall be subject to the inspection of representatives of the Engineer to be designated in writing addressed to Contractor by the Engineer.

2. Subsequently Texas Eastern also entered into a settlement with Thibodeaux whereby it paid additional funds in settlement of any further maintenance claims.

enter into the settlement but approved the sum as reasonable. The indemnity claims between Texas Eastern and McDermott were then submitted to the trial court for decision.

The trial judge[3] found that Thibodeaux was entitled to seaman's status and to the warranty of seaworthiness;[4] that the inspection services of Texas Eastern were for the ship's benefit; that McDermott was entitled to the performance of these services in a workmanlike manner under Ryan;[5] that the negligence of Thibodeaux in failing to watch where he was walking and in failing to see the hoses was the proximate cause of his injury; and that the warranty of workmanlike performance [WWLP] was breached by Thibodeaux's own act. The trial judge further found that language in the contract between McDermott and Texas Eastern purporting to exonerate Texas Eastern for its own negligence to its employees was ambiguous and therefore must be construed against Texas Eastern, the party which had prepared the instrument. As a result of these findings, the trial court entered judgment dismissing the cross-claim of Texas Eastern, granting the cross-claim of McDermott for the $100,000 paid by it in settlement to Thibodeaux, and also assessing the costs of defense in the sum of $9,290.50 against Texas Eastern. Texas Eastern appeals from the adverse judgment.

3. At the direction of the trial court counsel for McDermott prepared the findings of fact and conclusions of law which are the subject of review here.

4. No finding of unseaworthiness, however, was made. Although our rejection of the applicability of Ryan is not predicated on the failure of the trial court to find unseaworthiness, the following comment from Whisenant v. Brewster-Bartle Offshore Company, 5 Cir., 1971, 446 F.2d 394, 403 n. 31, is pertinent: "In any application of the Ryan doctrine, it would appear that at least the following three elements must be present: (a) a vessel must be found to be unseaworthy, (b) the implied agreement or warranty of workmanlike performance must be breached, and (c) the injured party must have been a seaman of some type."

A. *McDermott's cross-claim for indemnity against Texas Eastern.*

1. *Inapplicability of the Ryan theory of indemnity.*

◼ The District Court granted McDermott's claim solely on the theory of indemnity derived from *Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), in which a shipowner liable to an injured longshoreman under the nondelegable duty of providing a seaworthy ship, was permitted to recover from the stevedore employer which had breached its WWLP. In *Ryan* the Supreme Court emphasized that the obligation of the contractor to perform the work properly and safely was of the essence of the "stevedoring contract." 350 U.S. 124, 133, 76 S.Ct. 232, 237, 100 L.Ed. 133. Although we have extended the doctrine to non-stevedore maritime contractors in limited circumstances,[6] the reach of that doctrine has never encompassed a situation where no warranty, express or implied, has been given by the alleged indemnitor. That is the situation here. It is implicit in the "warranty of workmanlike performance" that the warrantor is performing some type of duty for the benefit of the party to whom the warranty is made. There must, of course, be a warranty in order to have a breach thereof. Texas Eastern was engaged in no type of service for McDermott and made no warranty to

5. *Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The *Ryan* doctrine has been abrogated by the 1972 amendments to the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 901. *See Parfait v. Jahncke Service, Inc.*, 5 Cir., 1973, 484 F.2d 296; *LeBlanc v. Two-R Drilling Co.*, 5 Cir., 1976, 527 F.2d 1316. However, the present action which arose in 1970 is not affected by the subsequent amendments.

6. *See, e. g., Parfait v. Jahncke Service, Inc.*, 5 Cir., 1973, 484 F.2d 296 (diesel repair service contractor); *Lusich v. Bloomfield Steamship Company*, 5 Cir., 1966, 355 F.2d 770 (ship repair contractor); *Whisenant v. Brewster-Bartle Offshore Company*, 5 Cir., 1971, 446 F.2d 394 (drill pipe contractor).

its contractor. To the contrary, it was McDermott which, according to the contract and the evidence, was performing a service for Texas Eastern, *i. e.*, construction of a pipeline. It was McDermott, not Texas Eastern, which under the express provisions of the contract warranted that it would "perform the work in a workmanlike manner." There is nothing in the contract or the evidence to show, or from which we might infer, that Texas Eastern owed any duty to McDermott. It had a right under the contract, but no obligation, to inspect.[7] We have consistently refrained from extending the *Ryan*-type indemnity "beyond those controversies involving the 'special rules governing the obligations and liability of shipowners'[8] which necessitated its formulation and justify its application." See *In re Dearborn Marine Service, Inc.*, 5 Cir., 1974, 499 F.2d 263, 287. *See also Delta Engineering Corporation v. Scott*, 5 Cir., 1963, 322 F.2d 11; *Ocean Drilling & Exp. Co. v. Berry Bros. Oilfield Service*, 5 Cir., 1967, 377 F.2d 511. The application of the doctrine to the facts of the present case is clearly improper. Having found that Texas Eastern owed no warranty, it is unnecessary to consider the contention of McDermott that the negligence of Thibodeaux should be imputed to his employer, Texas Eastern, in determining whether the WWLP was breached.[9] The District Court erred, therefore, as a matter of law in concluding that Texas Eastern owed a warranty of workmanlike performance to McDermott.

## 2. Tort indemnity.

The active-passive tort theory of indemnity, whereby an actively negligent tort-feasor is required to indemnify a passively negligent tort-feasor,[10] is unavailable to McDermott as there was no evidence or finding of negligence on the part of Texas Eastern. The tanks and hoses responsible for Thibodeaux's fall were owned by McDermott. Neither the contract nor the evidence shows that Texas Eastern's inspectors had anything to do with the equipment. McDermott does not even so contend. Moreover the District Court's finding of no

---

7. McDermott contends that the inspection services performed by Texas Eastern were more than a "look and see" proposition, and in this respect refers us to Paragraph .124 of the contract which provides:

   Contractor shall perform the work to the satisfaction of the engineer. In the event of any disagreement between the contractor and the engineer as to the requirements of the contract documents, the decision of the engineer will be final in the absence of actual fraud.

   Texas Eastern does not dispute its authority to reject the work performance of McDermott, but contends that such a right does not convert its inspection services into duties imposed on it by McDermott. Paragraph .125 of the contract substantiates the contention of Texas Eastern and makes it clear that the performance of McDermott was in no way dependent upon Texas Eastern's right of inspection; it reads as follows:

   As stated in Paragraph .351 of the General Conditions, the Contractor is an "Independent Contractor" who is responsible to the Company for all materials delivered and for the results herein contracted for. The authority of any representatives of the Company or of the Engineer is limited to such determinations concerning the interpretation and performance of the Contract as are provided for herein to ascertain whether the work is being performed according to the provisions and requirements of the Contract Documents. *The failure of any representative of the Company or of the Engineer to condemn or reject work or materials, or otherwise to exercise any function entrusted to him, shall not excuse Contractor from the faithful performance of this Contract,* nor shall such action or inspection imply any acceptance by the Company or by the Engineer of faulty work or material. (Emphasis supplied.)

8. *Italia Societa v. Oregon Stevedoring Company*, 376 U.S. 315 at 324, 84 S.Ct. 748 at 754, 11 L.Ed.2d 732 (1964).

9. This Court has recognized that the negligence of the injured employee is a factor to be considered in determining whether the employer has breached the WWLP. *See Diaz v. Western Ventures, Inc.*, 5 Cir., 1972, 467 F.2d 1361; *Lusich v. Bloomfield Steamship Company*, 5 Cir., 1966, 355 F.2d 770; *Julian v. Mitsui O.S.K. Lines, Ltd.*, 5 Cir., 1973, 479 F.2d 432.

10. *See Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill. Co.*, 5 Cir., 1969, 410 F.2d 178; *Kelloch v. S & H Subwater Salvage, Inc.*, 5 Cir., 1973, 473 F.2d 767; *Constance v. Johnston Drilling Company*, 5 Cir., 1970, 422 F.2d 369.

negligence by McDermott was, according to the standards used on appellate review, clearly erroneous. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Chaney v. City of Galveston*, 5 Cir., 1966, 368 F.2d 774, 776. *See also United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed.20 (1954). After thoroughly reviewing the record we are left with such a conviction.

When the jury trial was adjourned because of the settlement, three witnesses, including Thibodeaux, had testified. Their testimony established that it was the McDermott crew which had allowed the hoses to remain across the passageway between the x-ray station and dope station; that there was available an accessible spool

in the area on which the hoses could have been placed; that the purpose of the hoses was to ignite the dope pot but which was not being ignited, nor had been, for some time prior to the accident; that the artificial lighting in the passageway was poor and that the injury occurred at approximately daybreak on a cloudy, overcast morning.[11] Under these circumstances we hold that the district judge was clearly erroneous in failing to find McDermott actively negligent in proximately causing the accident. McDermott not only created the foreseeable hazard but had an opportunity to correct it, which it failed to do.

The same facts which support our decision that McDermott was actively negligent are the basis for our further holding that McDermott breached its WWLP to Texas Eastern. The warranty owed by McDermott was not the implied *Ryan*-type WWLP due by a stevedoring company to a shipowner, but an express agreement con-

---

11. James Lacaze, an employee of Inspection Signal Service, testified that none of his fellow employees nor the Texas Eastern inspectors used the dope pots or the tanks, hoses and torches for lighting the pots. He said that he saw the accident, and at the time acetylene hoses were lying across the 6- to 7-foot opening leading to the x-ray station. He said that the dope crew men were employed by McDermott. He had seen the dope crew "throw the torch back across the opening where the acetylene bottles were" after using the hose to light the dope pot; that the hose itself "would lay down on the floor" across the opening. There was a spool in the area on which the hoses could have been wrapped. He was further asked:

Q. At that time [on the morning of the accident] was the hose in use. In other words was anyone lighting a fire?
A. No, sir.
Q. Was anything else in that area?
A. It was wrapping off of their dope. It's a cardboard wrapping that these bundles of tar come in, say, about as big as a gallon water bucket—big water bucket— maybe a couple of foot long. And they peel that wrapping off before they throw it in the pot to heat the tar, and that debris was laying there next to the pot.
Q. What is the lighting like at this point?
A. It's shadowy. What I mean by that, you don't get full lighting from the floodlight on the—

Lacaze further testified that the accident happened "at the break of day or just a little

before. It was cloudy and naturally daylight was a little bit later coming; it was right at daybreak, I'd say."

Douglas Mitchell, also employed by Inspection Signal Service aboard the barge on the day of the accident, testified. He corroborated the testimony of Lacaze that neither his crew nor the Texas Eastern men had anything to do with the acetylene and oxygen bottles and hoses. He was not sure of the artificial lighting conditions in the passageway, but testified that when the accident happened, "It wasn't real light, we had been having a storm and all, and it was real cloudy, but it was past daybreak."

Plaintiff Henry Thibodeaux testified that the doping of the pipe was done by the McDermott dope crew. He was further asked:

Q. Did you see that hose before you tripped on it?
A. No, I didn't.
Q. Why didn't you?
A. Well, I couldn't see the hose. I went around that barrel and the lighting inside of the, all the light was on the inside of the working area there and the lighting on the outside wasn't too good. And it was just about daybreak and it was, it wasn't too light around there to see where you could see. You could see where, you could see walking, you could see large objects, but it wasn't light enough to see little small things.

He further testified that he had never seen the hose there before.

tained in Paragraph .051 of the contract which provides that

> Contractor shall do the work in a workmanlike manner with men skilled in the work assigned to them in strict accordance with the Contract Documents.

The language of the contract in this respect is clear and unequivocal. It is equally apparent that the manner in which McDermott allowed the dimly lighted passageway between the x-ray and dope stations to remain cluttered with the acetylene and oxygen hoses while not in use constituted a breach of its warranty. The finding that Thibodeaux was solely responsible for the accident by failing to observe is clearly erroneous.

■ There is no other reasonable basis for liability of Texas Eastern which would justify recovery over by McDermott. Thibodeaux's Jones Act suit against Texas Eastern would impose no liability inasmuch as there was not even the slightest evidence of employer negligence.[12]

### 3. The settlement.

■ Under well-settled principles of maritime law comparative negligence of an injured party requires reduction of any amount recoverable in proportion to that negligence. Considering the serious exposure to liability of McDermott for unseaworthiness and/or negligence and the consequent risk of a jury verdict in excess of the amount paid in settlement, even reduced by the comparative negligence of

Thibodeaux, McDermott's reason for settlement is clear. It then hoped to recoup this amount from Texas Eastern by its indemnity claim. However, since there is no basis for Texas Eastern's liability, McDermott is bound by its settlement.

### B. Texas Eastern's cross-claim for indemnity against McDermott.

■ Texas Eastern contends that it is entitled to recover indemnity from McDermott for the amount paid in settlement of Thibodeaux's maintenance and cure claim and for its attorney fees and costs, all pursuant to the provisions of its contract with McDermott and, alternatively, under the active-passive tort theory. The indemnity provision is set forth in the margin.[13] Texas Eastern contends that the trial court erred in determining that the language was ambiguous and therefore should be construed against Texas Eastern which prepared the instrument. However, our discussion, *supra*, on tort indemnity and our conclusion of active negligence on the part of McDermott suffice with reference to the agreement to show that Texas Eastern is entitled to indemnity. *See* n. 10 *supra*.

### C. Attorney's fees and costs.

■ The trial court awarded McDermott the sum of $9,290.50 representing the cost of defense. Foreseeable damages recoverable for breach of the WWLP include reasonable attorney's fees and litigation expenses. *Strachan Shipping Co. v. Konink-*

---

12. Under the Jones Act, 46 U.S.C. § 688, the test for liability is whether "employer negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Webb v. Illinois Central Railroad Co.*, 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); *Ferguson v. Moore-McCormack Lines*, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957).

13. The paragraph reads in pertinent part:
Contractor [McDermott] assumes entire responsibility for any third party claims and actions based upon . . . injuries . . . to persons . . . sustained . . . in connection with or . . . incidental to the performance of this agreement . . . regardless of whether such claims of actions

are founded in whole or in part upon alleged negligence of Company [Texas Eastern] . . . or the employees . . . thereof, including without limitation, the matters set out below. Contractor further agrees to indemnify and hold harmless Company . . . in respect of any such matters and agrees to defend any claim or suit or action brought against the Company . . . and to pay all damages, losses, costs and expenses, including reasonable attorneys' fees incurred by the Company . . . as a result of the claim or institution of any suit or action or the defense thereof. . . . The above includes without limitation, the following:
.1611. All injuries . . . to Contractor's employees and all other persons.

*lyke Nederlandsche S.M., N.V.*, 5 Cir., 1963, 324 F.2d 746; *McCawley v. Ozeanosun Compania, Maritime, S. A.*, 5 Cir., 1974, 505 F.2d 26. We reverse and remand for a determination of the amounts due Texas Eastern.

REVERSED AND REMANDED.