**UNITED STATES LINES COMPANY,
Appellant,**

v.

**Leroy WILLIAMS et al., Appellees.**

**No. 22087.**

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1966.

James F. Moseley, Clark W. Toole, Jr., Kurz, Toole, Maness & Martin, Jacksonville, Fla., for appellant.

Steven A. Werber, Lloyd C. Leemis, Jack F. Wayman, Boyd, Jenerette & Leemis, Jacksonville, Fla., for appellee Strachan Shipping Co.

Before JONES and BROWN, Circuit Judges, and BREWSTER, District Judge.

### JOHN R. BROWN, Circuit Judge.

Of the hundreds of amphibious Tinker-to-Evers-to-Chance juridical round robins churned by the swells of *Sieracki-Ryan-Yaka-Italia*,[1] this is one of the simplest. Simple in outline of its facts, in its cast of characters and in its outcome through the jury verdict, it really offers only one significant legal question. All others pretty well washed out by the jury's resolution of the facts and the remaining one became alive by the jury's verdict and our recent intervening opinion which made the trial Judge an erring prophet.

Unlike so many, this one starts out simply as to the parties. There is, to be sure, the Longshoreman who sues, the Shipowner who is pursued and who, in the spirit of the enterprise, turns on the Stevedore, the employer of the Longshoreman and one who thought at one time that the exclusive liability clause of the Longshoreman's Act, 33 U.S.C.A. § 905, meant what it said. The verdict was a two-part general one for the plaintiff Longshoreman against the Shipowner and in favor of the impleaded Stevedore.[2] The Shipowner alone appeals.

The No. 4 tween deck and lower hold of the SS AMERICAN BANKER, then at the Port of Jacksonville, Florida, undergoing discharge of her last stick of cargo preparatory to return to Virginia to join the mothball layup fleet, was the scene. Williams, an employee of the Stevedore, was a part of the gang working in the No. 4 lower hold discharging a cargo of steel beams 40 to 60 feet in length. To permit a suitable cargo sling to be wrapped around the drafts, someone in the gang decided that a piece of dunnage was needed on which to rest one end of the beams. No dunnage was available in the lower hold. Williams, using the ship's ladder, went up to the tween deck where he found some dunnage stowed in the offshore wing. This was dunnage remaining after discharge of some cargo at prior ports. Little or no care had been exercised by the ship's crew in determining fitness of the dunnage for further use, absence of nails, etc., since it was intended that this and all other dunnage and trash be removed[3] at Jacksonville prior to layup.

Williams found a 4″ x 6″ timber approximately 8′ long which he thought suitable. Conscious, as he was, of the possible presence of nails, he examined the piece as best the light would permit, concluded it was fit, and pulled it over to the square of the hatch. After hollering out a warning to the gang below, he threw the timber into the lower hold. Unfortunately for him, there was a spike protruding several inches which caught his clothes, and he was pulled in with the dunnage.

■■ Against virtually uncontradicted proof from the ship's mate that before

---

1. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Ryan Stevedoring Co., Inc. v. Pan-Atlantic SS Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Reed v. S. S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448; Italia Socita etc. v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732.

2. 

| | |
|---|---|
| Longshoreman | Williams |
| Shipowner | United States Lines Company |
| Stevedore | Strachan Shipping Company |

---

3. Besides discharge of cargo, the Stevedore was to perform this work also.

stowing dunnage, it is ordinarily inspected and suitable steps taken to remove or bend protruding nails to eliminate the obvious risk of injury, it is difficult to comprehend the Shipowner's contention that there is insufficient evidence to sustain the charge either of unseaworthiness, negligence, or both. Recognizing that unseaworthiness is ordinarily a question of fact for jury or fact-finder resolution, Jefferson v. Taiyo Katun, K.K., 5 Cir., 1962, 310 F.2d 582, 583, cert. den. 1963, 372 U.S. 967, 83 S.Ct. 1091, 10 L.Ed.2d 130, although it may be, Walker v. Harris, 5 Cir., 1964, 335 F.2d 185, cert. den., 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342, or become so, as a matter of law on resolution of subsidiary findings, Mills v. Mitsubishi Shipping Co., 5 Cir., 1966, 358 F.2d 609, the record warranted, if it did not require, such a finding on the simple classic test of reasonable fitness for the work intended.

As near as we can discern it, the Shipowner at this juncture argues that the dunnage was not being used for its intended purpose since dunnage is to be laid, not thrown. It then tries to fortify this argument by a sort of full-astern reverse application of those cases which, to establish breach of the warranty of workmanlike performance, impute to the stevedore-employer the negligence of the injured longshoreman himself.[4]

We think the jury was entitled to conclude that the dunnage was available for use, dunnage with long nails protruding was dangerous and not fit and, of course, there was no doubt that this condition was causally related directly to the injuries. This left only the matter of reduction for claimed contributory negligence on the part of the Longshoreman as to which the jury was likewise fully charged. Treated by all as a jury issue, the jury had ample basis for the verdict.

■ The Shipowner fares no better in most of its attacks on the charge. The first complains of instructing the jury that a " * * * failure by [the Stevedore] to inspect the area tween deck does not constitute a breach of implied warranty of workmanlike service." The Shipowner, almost as much as conceding that as an academic matter the instruction was proper, seems to assert that it was erroneous because inapplicable. As was the trial Judge, we are inclined to agree since nothing *in or on* the tween deck area was pertinent to this casualty. If it was error, and we stress the if, it was certainly not harmful. F.R.Civ.P. 61.

■ In much the same boat is the complaint of the failure of the trial Court as a part of an otherwise detailed charge on the so-called workmanlike warranty[5] to expressly instruct the jury that this

4. The Shipowner stresses Damanti v. A/S Inger, 2 Cir., 1963, 314 F.2d 395; Mortensen v. A/S Glittre, 2 Cir., 1965, 348 F.2d 383; Drago v. A/S Inger, 2 Cir., 1962, 305 F.2d 139, cert. denied, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232; Holley v. S. S. Manfred Stansfield, E.D.Va., 1958, 186 F.Supp. 212; and, as we point out later, there must be added our own such holding in Lusich v. Bloomfield S. S. Co., 5 Cir., 1966, 355 F.2d 770.

5. "The Court instructs you that there was an implied duty upon Strachan Shipping Company, as a stevedore, to perform its stevedoring services in a workmanlike manner. Accordingly, if you find for the plaintiff Leroy Williams and against the defendant United States Lines, it will then be your duty to determine whether or not Strachan Shipping Company breached its implied warranty of workmanlike service.

'Workmanlike service', under the facts before you in this case, means using reasonable care under all the circumstances, and particularly making proper use of the vessel, its appurtenances, dunnage, appliances, and machinery; using the appliances and machinery which were entrusted to its custody and control in a proper and safe manner. Refraining from using such equipment for purposes for which it was not intended. Avoiding the creation of dangerous conditions on board the vessel where the said stevedoring work was being performed. Supplying and using competent and experienced agents, servants and employees. Properly supervising and conducting discharging operations. Warning of any dangers which might arise during the conduct of said work; and eliminating any dangerous condition which might arise or might be discover-

warranty was "tantamount to a manufacturer's warranty." [6] In discussing the action over against the Stevedore, the Court's charge was full and in great detail as to the nature of the warranty of workmanlike performance. No exceptions as such were taken to it. The Shipowner's criticism is reduced, therefore, to the failure to use the proffered words "tantamount to a manufacturer's warranty." As a predicate it claims that this is what *Italia* (see note 1, supra) so holds.

■ There are several answers. First, what an appellate Judge, or here a Justice, says for the Court, even the highest Court of the land, does not mean that such language may, or should, be used as a jury charge. It all depends on whether the words presumably chosen by one artificer for others of presumed like skill communicate the applicable legal principle to those attending, as it were, their once-in-a-lifetime-law-school-for-a-day. Next, the trial Court accurately pointed out that in substituting "tantamount" for Mr. Justice White's "comparable", the Shipowner was introducing confusion by an ambiguous term. And most important, the colloquy added up to the Judge's wise conclusion that prefaced by "tantamount" or "comparable" or otherwise, an effort to drag in the esoteric, unpredictable uncertainties and undulations of the dynamic field of manufacturer's warranties would bring not light, but darkness, to the jury's labors.

■ We have concluded, however, that the Shipowner's point is well taken that under the charge as it was constructed, both in the instructions given and in the form of the verdicts used, the jury was never told that in evaluating performance by the Stevedore in compliance with the legally imposed duty of workmanlike performance, the conduct of the plaintiff Williams was an element to be reckoned with. It is true, of course, that the charge was emphatic that the failure of Williams to exercise reasonable care for his own safety would amount to contributory negligence. But the charge was equally precise that negligence of the Longshoreman had only one consequence —namely, reduction of the amount of damages to be awarded to the plaintiff in proportion to the jury's finding of the extent of his fault. Full as was the Court's charge on workmanlike performance (see note 5, supra), there was not the slightest suggestion that the actions of Williams would or might be the actions of the Stevedore or that the Stevedore might have to bear legal responsibility for actions of Williams if the jury concluded that these were in one or more particulars a failure to comply with the standards of workmanlike performance articulated in the Court's charge.

On the other hand, however, the record is absolutely crystal clear that the Shipowner had earnestly urged the Court to charge that a negligent act of Williams could amount to a breach of the Steve-

---

ed by the exercise of reasonable care and inspection in the course of the work.

On the other hand, if you find from the facts before you that there was no breach of implied warranty on the part of Strachan Shipping Company to perform its services in a workmanlike fashion but that in fact such services were performed in a workmanlike fashion, then you will find for Strachan Shipping Company.

The burden of proof is upon the defendant United States Lines to prove the alleged breach of implied warranty of workmanlike service by a preponderance of the evidence."

Since no exception was taken to this part of the charge and no challenge is

made here we would sound the caveat that including it in an opinion is merely to illumine the error in not giving the requested charge, not to indicate our approval or disapproval of the part given.

6. After language substantially similar to that used by the trial Judge (note 5, supra) in explaining the existence of the *Ryan*-warranty, the request concluded: "This warranty of workmanlike service is tantamount to a manufacturer's warranty, and if stevedores fail to comply with said warranty and the shipowner is caused to suffer damage the shipowner is entitled to recover all losses or damage from the stevedoring company arising from the breach of the implied warranty of workmanlike service."

dore's implied workmanlike warranty.[7] The colloquy in the charge conference including discussion of what *Damanti* (specifically cited to the Court, see note 7, supra) meant in the light of *Italia* (note 1, supra), brought sharply into focus the difference between the trial Judge and the Shipowner's counsel on the asserted theory that the action of the injured Longshoreman could be imputed to the Stevedore as a significant, if not sole, factor in determining breach of the warranty of workmanlike performance. The trial Judge was, of course, aware that this doctrine is firmly established in the Second Circuit,[8] but he expressed doubt that we or the Supreme Court would hold that *Damanti*, and others, would be applicable where the defect (the nail in the dunnage) was not created by the Longshoreman's actions. It was here, of course, that his oracular resources were "unseeworthy." For since that time we have decided Lusich v. Bloomfield S.S. Co., 5 Cir., 1966, 355 F.2d 770, (see note 4, supra), which, distinguishing Drewery,[9] holds positively " * * * that the negligence of the contractor's injured employee * * * is a factor to be taken into consideration on the issue of breach of the contractor's im-plied warranty. Damanti v. A/S Inger, 2 Cir., 314 F.2d 395 (1963) * * *; Nicroli v. Den Norske Afrika, [etc.,] 2 Cir., 332 F.2d 651 (1964) * * *." 355 F.2d 770, 778. And see T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir., 1966, 362 F.2d 745 [June 23, 1966].

■ Here the selection by Williams, made in a poorly lighted, relatively dark tween deck area, of the particular piece of timber out of a stack of dunnage the Stevedore knew was not primarily intended for further use on the vessel since part of its engagement was to clean out the holds including dunnage and trash, might well have led the jury under proper charges to conclude that a workmanlike stevedore would not have taken these steps including the effort to throw the timber down into the hold without a closer inspection of it. But nowhere was the jury given either an instruction as to the significance or consequences of actions by Williams [10] in relation to his employer, the Stevedore, nor was there, although requested, one or more special interrogatories [11] which would have revealed such a fact finding.

The consequence is that while the verdict and judgment as between the plain-

---

7. "United States Lines Company may recover over from Strachan Shipping Company for breach of its implied warranty or workmanlike service even though the breach is based solely upon the negligent act of the Plaintiff-longshoreman.

"Damanti v. A/S Inger, 314 F.2d 395, 2 Cir., 1963; Holley v. The Manfred Stansfield, 186 F.Supp. 212, (E.D.Va., 1960)."

8. In addition to the cases in note 4, supra, see also Nicroli v. Den Norske Afrika-Og Australielinie, 2 Cir., 1964, 332 F.2d 651; Guarracino v. Luckenbach S. S. Co., 2 Cir., 1964, 333 F.2d 646.

9. Drewery v. Daspit Bros. Marine Divers, Inc., 5 Cir., 1963, 317 F.2d 425.

10. Although it now is quite plain that concepts of "negligence" as such are frequently not pertinent or involved in assaying the breach of workmanlike warranty, see *Italia*, supra; Lusich, supra, n. 8, the trial Court did not reject the requested charge (see note 7, supra) or a suitable modification of it because it referred to "the negligent act of" Williams (see note 7, supra). A negligent act certainly can constitute a breach even though a breach might result from a non-negligent act. And in any event both Court and counsel had plenty of company in the generalized loose references to "negligent," breach, etc., e. g., Ray v. Compania Naviera Continental, S. A., D.Md., 1962, 203 F.Supp. 206; and that includes some of our own, e. g., CIA Maritima Del Nervion v. James J. Flanagan Ship Corp., 5 Cir., 1962, 308 F.2d 120, 123.

11. Although we reject the Shipowner's asserted claim of error, as such, for the failure to use special interrogatories, F.R. Civ.P. 49(a), especially in view of the pretrial acquiescence of all in a proposed general charge, the case does point out again the utility of this flexible device if carefully used. It helps greatly in meeting the *Weyerhaeuser* requirement of a careful separation of the issues for jury consideration, Weyerhaeuser S. S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Lusich v. Bloomfield

tiff Williams and the Shipowner are amply supported and are to be affirmed, the cause must be reversed and remanded for a new trial and other consistent proceedings in the indemnity action against the Stevedore.

Affirmed in part; reversed and remanded in part.

Steamship Co., 5 Cir., 1966, 355 F.2d 770, 777, and see Judge Moore's suggestion that there may be a variety of ways in which this can be accomplished, McNamara v. Weichsel Dampschifffahrts, etc., 2 Cir., 1961, 293 F.2d 900, 904. And more important it enables the trial Court, the jury in considering the separate issues on indemnity if subsequently submitted, and the appellate Court to know for a certainty just what character of act the Shipowner has committed (e. g., unseaworthiness, negligence, or both), the relationship if any of the injured workman to the causal mechanism and in evaluating whether conduct of the shipowner *vis-a-*

*vis* the stevedore is of a character "to preclude" recovery of the indemnity. See Waterman S.S. Corp. v. David, 5 Cir., 1965, 353 F.2d 660. Of course care must be used because as we have pointed out, nothing reveals the lack of clearheaded precise thinking about what the vital issues really are quite so much as a faulty special issue verdict looked at in retrospect. R. B. Company v. Aetna Ins. Co., 5 Cir., 1962, 299 F.2d 753, 756; and see, e. g., Royal Netherlands S.S. Co. v. Strachan Shipping Co., 5 Cir., 1966, 362 F.2d 691 [June 27, 1966].