552 F.2d 1126
 Bobby R. NUTT, Union Oil Company of California and Aetna
Casualty and Surety Company, Plaintiffs-Appellees,
v.
LOOMIS HYDRAULIC TESTING COMPANY, INC. and the Home
Insurance Company, Defendants-Appellants.
 No. 75-2429.
 United States Court of Appeals,
Fifth Circuit.
 May 27, 1977.
 
 Philip J. McMahon, Houma, La., Lester J. Lautenschlaeger, Jr., New Orleans, La., for defendants-appellants.
 Robert C. Leininger, Jr., New Orleans, La., for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, Chief Judge, and HILL and FAY, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This case, like most suits for indemnity, combines the best of musical chairs and hot potato the object of the game is to be sitting pretty when the judicial music stops, by leaving the other party holding the spud. Here, while appellant was stuck with only half of the potato, he objects strenuously to having to bear any of it at all. In more austere terms it is the case of a vessel owner, cast entirely for the death of the operator of the other vessel, seeking and successfully obtaining contribution-indemnity under the 50/50 Divided Damages rule. The loser, owner of the other vessel, challenges any contribution on the ground (i) that negligence of its operator may not be imputed to it and, as an anchor to windward, urges (ii) apportionment should be based on comparative fault, not the old-time rigid 50/50 rule. We reject (i) but sustain (ii). Accordingly, our ditty in this case modifies the judgment of the magistrate below by reducing the amount of damages required to be borne by appellant, but as modified, we affirm.
 
 The Accident
 
 2
 Decedent Uwell J. Derouen was employed by Loomis Hydraulic Testing Company, Inc. (Loomis) as a shop foreman. Bobby R. Nutt (Nutt) was an employee of Union Oil Company of California (Union). On December 12, 1966, the Decedent, together with Earl T. Strickland, a sales representative for Loomis, took the company motorboat[1] to check Loomis employees on Gracey-Hellum Rig # 5, a Union well.[2] Decedent and Strickland arrived at the rig around 4 p. m., stayed for about a half hour and departed.
 
 
 3
 When they departed Gracey-Hellums Rig # 5, Decedent was the operator. He proceeded down the canal, which dead-ended where Rig # 5 was located, doing approximately (as the parties described it, in very unnautical terms) 35 miles per hour. The weather was very cold and both men were heavily clothed. Due to the cold and wind they were both sitting behind the windshield which was cracked. As Derouen approached Union's Main Terminal Area canal, he was navigating the motorboat parallel to and approximately 16 feet to the left of a mud bank five to eight feet high topped with thick vegetation four to six feet high. Derouen slowed the motorboat to about 15 to 18 miles per hour as he entered the intersection of that canal and the canal leading to Union's Main Terminal.
 
 
 4
 At this time Nutt had departed Union's Main Terminal at the end of that canal in Union's crew boat.[3] As the crew boat approached the intersection, it was approximately 30 to 40 feet from the left bank or to the left of the center of that canal. The sliding plexiglass window to the left of Nutt was cracked and fogged. Immediately prior to entering the intersection and in order to execute his turn, Nutt slowed his port engine, and turned his wheel slightly to the left. This action caused the boat to list to the left and begin her turn to port. At this point, the motorboat came into sight. At that moment the crew boat swerved to starboard and the motorboat simultaneously swerved to port resulting in the collision, which caused decedent's death and totally destroyed Loomis' boat.
 
 State Trial Court
 
 5
 Suit was filed in Louisiana State Courts on Decedent's behalf against Nutt, Union, and Union's insurer, Aetna Casualty & Surety Company (Aetna).[4] These defendants filed a third party petition against Loomis and its insurer, The Home Insurance Company (Home), seeking contribution-indemnity under the hold harmless provision of the service contract between Loomis and Union.[5] After being impleaded, Loomis filed a reconventional demand against Union seeking damages for the loss of its vessel in the collision.
 
 
 6
 On June 8, 1971 the state trial court entered its judgment. It found that "both vessels were negligently operated and that this negligence of both proximately caused the collision".[6] After finding both parties negligent, the trial court applied the rules of comparative negligence then applicable to maritime tort claims growing out of a collision. In doing so, the trial court assessed Nutt's negligence at 60% and Decedent's contributory negligence at 40%.
 
 
 7
 Judgment was therefore entered in favor of Decedent's widow and minor son, in the amount of $112,639.42, which represented the total Judgment award in favor of these plaintiffs[7] ($145,000.00), less 40% deducted for the Decedent's contributory negligence, plus court costs and interest. The court also found that Loomis did not intend to indemnify Union's own negligence under the contract, and accordingly dismissed Union's third party complaint against Loomis. Finally, Loomis received a judgment in the amount of $1,000.00, in its reconventional demand filed against Union for the damage to its boat.
 
 
 8
 After the Judgment of the Lower Court was affirmed by the First Circuit Court of Appeals for the State of Louisiana, and the Supreme Court of Louisiana denied writs, Union paid the heirs of Decedent $112,639.42.
 
 The Federal Indemnity Action
 
 9
 After Union was forced to pay the heirs of Decedent $112,639.42, it instituted litigation in United States District Court seeking contribution,[8] under the Divided Damages rule,[9] from Loomis and Home. After answer was filed, a joint stipulation of facts[10] was agreed upon and filed along with legal memorandum of counsel. On September 17, 1974, the case was referred to the United States Magistrate for "adjudication on stipulation of facts and memorandum."
 
 
 10
 Based upon the stipulated facts, the Magistrate concluded that, since the collision in question was caused by the mutual fault of both vessels and their operators,[11] Union was entitled, as a matter of fact and of law under the Divided Damages rule, to contribution from Loomis in the amount of $56,319.71. Judgment was entered accordingly. It is from this judgment that Loomis and Home appeal, contending that (i) the District Court erred in imputing the negligence of Decedent to Loomis; (ii) United States v. Reliable Transfer Co., 1975, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251, 1975 A.M.C. 541 should be applied retroactively to this case; and (iii) under Reliable Transfer, Loomis should not have to pay anything, since Decedent's award has already been reduced by 40%, the extent of Decedent's contributory negligence.
 
 Imputed Negligence
 
 11
 Loomis contends that the District Court erred in imputing the negligence of the Decedent to Loomis. Loomis relies primarily on the cases of Drewery v. Daspit Brothers Marine Divers, Inc., 5 Cir., 1963, 317 F.2d 425, 1963 A.M.C. 1787; and Loffland Brothers Co. v. Roberts, 5 Cir., 1968, 386 F.2d 540, 1968 A.M.C. 1463. Union argues in response that those cases are inapplicable to a collision case where both vessels are at fault and the Divided Damages rule applies. Union relies on Empire Seafoods, Inc. v. Anderson,[12] 5 Cir., 1968, 398 F.2d 204, 1968 A.M.C. 2664, cert. denied, 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444, for the principle that the amount of a personal injury award or settlement must be included as an element of damages to be divided equally between the two offending vessels after first deducting any amount assessed against the personal injury claimant for his own contributory negligence.
 
 
 12
 The District Court concluded that the "question of whether the restriction on indemnity described in Loffland Brothers should affect the application of the Divided Damages Rule in a mutual fault collision is apparently one of first impression." After phrasing the issue in this manner, the Court ruled that "the Divided Damages Rule is unaffected by the holding in Loffland Brothers, supra."[13]
 
 
 13
 The District Court was correct in noting that this case is one of first impression. In this case, Derouen, Loomis' employee, was 40% contributorily negligent and therefore partially responsible for causing this accident. Stated most favorably to Loomis, on the assumption that if Loomis is found to be negligent, it can only be through the imputed negligence of his servant, Derouen, it is clear that if Union sought indemnity, or if third parties such as cargo owners, or those sustaining personal injuries or property losses sought recovery, Loomis would be liable. See, e. g., Standard Oil Company v. Anderson, 1909, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480. Where, however, the only damages for which Union seeks apportionment are damages for the wrongful death of Derouen the contributorily negligent employee of Loomis Loomis understandably contends that the restriction on indemnity described in Loffland Brothers prevents the application of the Divided Damages rule or the application of the Reliable Transfer[14] comparative negligence rule. The narrow, unique issue presented for our consideration, therefore, is whether the application of the normal rule in mutual fault collision cases whether it be the Divided Damages rule or the Reliable Transfer comparative negligence rule is dependent on who or what is injured, rather than on the fact of injury and the fact of mutual fault. For the reasons discussed below, we conclude that this issue must be decided against Loomis and that our decision does not stand on Drewery or Loffland.
 
 
 14
 Appellant cites both Drewery and Loffland for the sweeping proposition that "the negligence of an injured employee may not be imputed to his employer so as to render the employer liable in indemnity for the injur(y) sustained by the employee." Drewery need not detain us for long. It, and its sweeping language, has since been limited to its particular facts and to the issues presented when a question of contractual indemnity is raised. See Lusich v. Bloomfield Steamship Company, 5 Cir., 1966, 355 F.2d 770, 777-78, 1966 A.M.C. 191; United States Lines Co. v. Williams, 5 Cir., 1966, 365 F.2d 332, 1966 A.M.C. 2418; see also Arista Cia. DeVapores, S.A. v. Howard Terminal, 9 Cir., 1967, 372 F.2d 152, 153-54, 1967 A.M.C. 312; cf. Shenker v. United States, 2 Cir., 1963, 322 F.2d 622, 629; but see White v. Texas Eastern Transmission Corp., 5 Cir., 1975, 512 F.2d 486, 489, n. 7, 1976 A.M.C. 1153; Loffland, supra, at 549-50; but cf., Carrillo v. Sameit Westbulk, 1 Cir., 1975, 514 F.2d 1214, 1218, 1976 A.M.C. 1369. In this case, the judgment allowing contribution-indemnity was based not upon the service contract between Union and Loomis,[15] but upon the negligence of the vessels and operators involved in this accident.[16]
 
 
 15
 In Loffland an employee of a casing contractor was injured in an accident which occurred during a casing operation on a fixed offshore drilling platform located on the Outer Continental Shelf off the coast of Louisiana. The platform was owned and operated by Continental Oil Company and the drilling operations were being performed by Loffland Brothers Company pursuant to a contract with Continental. Casing operations were performed under a standing contract between O.D. Casing and Continental.
 
 
 16
 The jury found that the employee's injuries were caused mainly because of the negligence of the Loffland Brothers' drilling employee. The injured employee was found to be ten percent contributorily negligent, however, and his judgment was reduced by that amount. Loffland then filed third party claims for indemnity against O.D. Casing and Continental. After Loffland's claims were dismissed by the trial court, Loffland argued in the Court of Appeals that it was " * * * entitled to seek indemnity from O.D. Casing on the theory of an implied warranty of workmanlike service (WWLP). It argue(d) that O.D. Casing impliedly warranted under its contract with Continental to perform the casing operation in a workmanlike manner, and that Loffland, as a contractor on the offshore platform, was a third-party beneficiary of the contract between O.D. Casing and Continental." Loffland, supra, at 548.
 
 
 17
 We rejected this argument on the ground that the doctrine of seaworthiness, which formed the basis for WWLP relied on by Loffland, had no application to this case, since "the offshore platform involved in this case was stipulated not to be a vessel, and (the injured employee) was consequently not a seaman."[17] Id., at 549.
 
 
 18
 The Court also rejected the theory that Loffland could recover against O.D. Casing on a contract theory of indemnity: "We have held that an independent contractor employer at an oil well, such as Loffland, is not a third-party beneficiary to contracts between the well owner or lessee and another independent contractor." Id., at 549.
 
 
 19
 The Court then went on to conclude that Loffland could not maintain its action against O.D. Casing on a tort theory of indemnity. However, its exclusive authority for doing so was Drewery, which it had cited for the proposition that "the negligence of an injured employee may not be imputed to his employer so as to render the employer liable in indemnity for the injur(y) sustained by the employee * * * ." Id. at 549. As we have discussed above, Drewery had been limited to its particular facts and to the issues presented when a question of contractual indemnity is raised. Therefore, because Loffland's discussion of the tort theory of indemnity is based on a case subsequently limited to its holding as to contractual indemnity, that discussion is of limited significance to the case before us now.
 
 
 20
 Loffland is therefore distinguishable. To the extent it relies on contract theories, it involves issues not now before us. To the extent that it discusses tort theories and indemnity, it is undercut as a binding precedent controlling this case by its total reliance on what has since become an outdated and inapposite authority.
 
 
 21
 Even more important, Loffland is distinguishable on its facts. It involved an offshore oil platform case, where no ships were involved and the platform was stipulated by the parties not to be a vessel.[18] The case before us, on the other hand, involves injuries arising from the mutual fault collision of two vessels.
 
 
 22
 Questions of apportionment of damages in mutual fault collision cases occupy a unique and long-standing position in our law. Until the Supreme Court handed down its recent decision in Reliable Transfer, supra, the Divided Damages rule, with roots "shrouded in the mists of history," (Reliable Transfer, supra, 421 U.S. at 401 n. 3, 95 S.Ct. at 1711) has withstood many attempts to create exceptions to it, though not for lack of attempts to do so.[19] Reliable Transfer has substituted comparative negligence for the Divided Damages rule, but even with the comparative negligence rule, apportionment of damages in mutual fault collision cases still occupies a unique position in our law, with accordingly unique concepts of indemnity, contribution or both.
 
 
 23
 Under these circumstances we do not consider ourselves bound to apply a rule of contribution-indemnity born and nurtured in a non-collision, non-maritime[20] fact situation to that of a collision of two vessels, each of which is guilty of significant fault. In short, we chart a new course and may adopt that rule of contribution-indemnity which best comports with common sense, logic, history, and the current of authority in related fields of law, unaffected by shoals, currents, winds or tides existing in another area.
 
 
 24
 For several reasons, we conclude the best rule in this case is to impute the negligence of Derouen to Loomis, so as to allow Union to maintain its contribution-indemnity claim against Loomis. First, to rule the other way would be totally irrational. Under the normal rules of apportionment of damages in mutual fault vessel collision cases, the negligence of Derouen would be imputed to Loomis, so as to allow Union to shift part of its damages to Loomis, so long as the collision injured anything or anyone but Derouen. See Standard Oil Co. v. Anderson, supra. But Loomis proposes a rule that would change all this as soon as one factor is changed that it is Derouen who was killed. The only possible justification we can see for such a rule is to "punish" Derouen's heirs somehow for Derouen's contributory negligence. But if such punishment is needed, it has already been provided by the trial court's reduction of the judgment due Derouen's heirs by 40%. Apart from the rejected Drewery-Loffland rationale, we can find no other justification for Loomis' proposed rule and Loomis has suggested none, either in its brief or during oral argument.
 
 
 25
 Second, once the collision between these two boats took place, who or what was injured or killed was the result of fate the parties involved might have control over getting into the accident in the first place, but they surely have no control in deciding who was killed or injured and who was spared death or injury. Tort law, unlike the law of strict liability, attempts to allocate losses arising out of human activity according to principles of fault. See Prosser, Torts 6 (4th ed. 1971). Under the circumstances of this case, fault cannot arise without control, imputed or otherwise. The fault in this case arises from negligently causing the accident in the first place, and not from the fortuitous circumstance that it was Derouen, rather than Nutt or Strickland, who was killed. Loomis proposes a rule in which it would incur liability in the second instance, while it would not in the first. Our rule, on the other hand, places the emphasis where it belongs not on the fortuitous circumstance of who gets hurt, but on the parties' degree of control over the accident. Loomis had sufficient control over the selection and supervision of its employees to justify imputing the employee's negligence and allowing contribution-indemnity when the employee's negligence injured a third party. Standard Oil Co. v. Anderson, supra. Loomis' control is not diminished one iota by the fortuity that it is the negligent employee who was injured, rather than a third party. Under these circumstances, we refuse to apply Loomis' proposed rule, and we find it to be irrational and not in accord with general principles of tort law or the general rules applicable to mutual fault vessel collision cases. Our rule, on the other hand, is sound on policy grounds, does not rest on artificial and unsound distinctions, and is in accord with the general principle of allocation of damages in mutual fault vessel collision cases.
 
 
 26
 Neither is our rule without precedent in other areas of the law. One such area is the Sieracki-Ryan-Yaka-Italia[21] triangular suit between maritime worker, shipowner and contractor. Under this judge-made law, now statutorily dry-docked,[22] a vessel could recover the damages for which it was liable to an injured seaman or pseudo-seaman where it could show that the stevedore breached an express or implied warranty of workmanlike performance (WWLP). In the Fifth Circuit, the contributory negligence of the injured seaman or longshoreman was a factor to be taken into consideration in determining whether the stevedore had breached his WWLP.[23] Under this judge-made principle, the contributory negligence of the employee was imputed, at least implicitly, to his employer, the stevedore, so as to require the stevedore to indemnify the shipowner for the damages already paid by the shipowner for the employee's injuries. Other Circuits have refused to be limited by our "factor" approach and have held that the employees' contributory negligence is directly and explicitly imputed to his employer, the stevedore, thus establishing an automatic breach of the stevedore's WWLP.[24]
 
 
 27
 Although this is not a WWLP situation, what we have done in those cases governed by maritime law is a strong indicator that in this area, the Court never felt bound by Loffland and Drewery. The District Court was correct in imputing the negligence of Derouen to Loomis for the purpose of determining whether Union could seek indemnity from Loomis.
 
 
 28
 50%/50% Or 40%/60%?
 
 
 29
 Loomis' second, and final, argument centers around its interpretation of Reliable Transfer, which it contends should be retroactively applied to this case. Reliable Transfer replaced the Divided Damages rule[25] in mutual fault vessel collision cases with the rule of comparative negligence:
 
 
 30
 "We hold that when two or more parties have contributed by their fault to cause property damage[26] in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault." Reliable Transfer, supra, 421 U.S. at 411, 95 S.Ct. at 1715.
 
 
 31
 Because this case was tried and appealed before Reliable Transfer was delivered by the Supreme Court, the Louisiana state courts and the District Court all applied the Divided Damages rule. Loomis argues that, assuming Reliable Transfer is retroactive, Loomis is not liable to indemnify Union for any part of the judgment finally paid out by Union. Loomis' argument proceeds in this fashion: Derouen's contributory negligence, amounting to 40%, was deducted from the Judgment, so that Union paid for its own (60%) negligence, while Derouen paid for his own (40%) negligence. Therefore, so the argument runs, Union's liability did not result in any way from Derouen's negligence but was actually mitigated by it by a reduction in the judgment by 40%. Loomis argues that if the judgment below is affirmed, this Court will have "fictitiously put back Derouen's negligence so that this negligence can be imputed to Loomis with the net result of Loomis reimbursing Union for one-half of Union's damages which is the same as reimbursing Union for one-half of Union's negligence." Loomis contends that this result would be unjust, because "Union, with 60% of the negligence (would pay only) a net total of 30% of the damages (while) Loomis and Derouen, if negligence is imputed, with 40% of the negligence, will pay or absorb 70% of the damages."
 
 
 32
 Although beguiling, this sophistic argument proceeds on a decisively false assumption. The Divided Damages rule is based not on what the damage victim claimed or on what the claim might have amounted to had it not been reduced by contributory negligence or otherwise. It is based on what each party paid out or incurred. The principle is that that cost is to be borne by each. Here, the entire cost of decedent's death was borne by Union, Loomis not having paid or incurred any loss therefore. The reduction by decedent's contributory negligence was a boon to each, but is utterly irrelevant to striking the balance under the Divided Damages rule or the comparative negligence rule of Reliable Transfer. Therefore, if Reliable Transfer is retroactive, then Loomis must bear that share of the damages which is proportionate to the comparative degree of its imputed fault, since it has contributed by its imputed fault to cause damage in a maritime collision.[27]
 
 
 33
 This Circuit has already held that Reliable Transfer should be applied retroactively. Matter of S/S Helena, 5 Cir., 1976, 529 F.2d 744, 754, 1976 A.M.C. 2022. See also People of State of California v. Italian Motorship Ilice, 9 Cir., 1976, 534 F.2d 836, 840 & n. 1, 1976 A.M.C. 2290; Kinsman Marine Transit v. Great Lakes Towing Co., 6 Cir., 1976, 532 F.2d 1073, 1074, 1976 A.M.C. 493; Crown Zellerbach Corp. v. Willamette-Western Corp., 9 Cir., 1975, 519 F.2d 1327, 1330, --- A.M.C. ---. Accordingly, under Reliable Transfer, Loomis must bear 40% of the final judgment Union was required to pay Derouen's heirs, since Loomis was (through the imputed negligence of Derouen) 40% at fault in the accident. Because the trial court erroneously required Loomis to pay 50% of the judgment initially borne by Union, we must reverse and remand to the District Court for a reduction of damages assessed against Loomis from 50% of the total judgment initially paid by Union to 40% of that amount.
 
 
 34
 AFFIRMED IN PART: REVERSED AND REMANDED IN PART.
 
 
 35
 JAMES C. HILL, Circuit Judge, dissenting.
 
 
 36
 Most respectfully, I dissent.
 
 
 37
 In my view, the majority finds, in the law, that the appellees who, in the premises, were guilty of 60 percent of the negligence causing death, should be credited, against the total damages, not only the 40 percent attributable to the plaintiff but also 40 percent of the remaining 60 percent which appellees ought to pay. I submit that this is a bizarre result and, happily I find nothing in the law to compel such a result.
 
 
 38
 The decedent, Derouen, whose death brought on the total controversy, was the employee of Loomis Hydraulic Testing Company. The decedent was operating the Loomis vessel. The Loomis vessel was in a collision with the Union vessel operated by Bobby R. Nutt. As a result of that collision, Derouen lost his life.
 
 
 39
 An action in the Louisiana state courts has determined the negligence attributable to each vessel. Both vessels were at fault and the fault of the Loomis vessel resulted solely and only from the negligent handling of that vessel by the decedent. As the majority opinion observes, ante slip opinion at 1128, there was a cracked windshield on the Loomis vessel. That undesirable condition of the vessel has not been proffered as nor found to have been any cause of the incident. The only actionable negligence attributable to the Loomis vessel resulted from the negligence of its operator, Derouen, the decedent.
 
 
 40
 The Union Oil Company vessel was responsible for 60 percent of the negligence; the Loomis vessel was responsible for 40 percent of the negligence.
 
 
 41
 Thus, in the wrongful death action, those having the right to recover for the death of Derouen had their full amount of damage ($145,000) reduced by 40 percent. Stated from the other point of view, Union received a contribution to the total amount of damages equal to 40 percent thereof because of the negligence of Derouen which was the negligence of the Loomis vessel.
 
 
 42
 Having received full credit due to it on account of the negligence chargeable to Loomis, Union has nevertheless brought this action against Loomis seeking a second bite at the apple. Asserting that the Loomis vessel contributed 40 percent to the disaster, and ignoring that it had already received credit for that 40 percent, Union asks that Loomis share in even the 60 percent of the damages which Union has been required to pay. We must not overlook the fact that the wrongful death award against Union of $112,639.42 was no more than has been determined to be attributable to no party's negligence except that of Union.[1]
 
 
 43
 The District Court, under the 50/50 Divided Damages Rule awarded Union judgment against Loomis for one-half of the $112,639.42. The majority concludes that 50/50 no longer applies but awards Union what I see as a windfall of 40 percent of the judgment based, once again, on the 40 percent negligence attributable to Loomis as the employer of the decedent. Thus, under our application of the law, Union which was 60 percent negligent in the tragedy will pay only 60 percent of the 60 percent total loss (36 percent); Loomis, because of the negligence of the decedent will pay 40 percent of 60 percent of the total loss (24 percent); and those entitled to recover for the death of Mr. Derouen will bear 40 percent of the total loss. When these figures are accumulated, it will be seen that as a direct result of Mr. Derouen's 40 percent negligent conduct, those deriving their rights from or chargeable with his conduct will bear 64 percent of the loss and Union, chargeable with 60 percent of the negligence, will bear 36 percent of the total loss. Should it appear that the law requires this result, I should dutifully subscribe to it. However, the law does not require such a result.
 
 
 44
 I submit that the Court, has, in carefully considered opinions, established the correct rule of law to be applied in issues of this sort. The majority dismisses the cases of Loffland Brothers Company v. Roberts, 386 F.2d 540 (5th Cir. 1968) and Drewery v. Daspit Brothers Marine Divers, Inc., 317 F.2d 425 (5th Cir., 1963), as being of no precedential value because they arose out of factual situations distinguishable from those presently under consideration. Though the questions in those cases may have been framed differently, the legal principles applied to their solutions are the identical tools needed by us today for the work we have to do on the case at hand. Stated very briefly, the one controlling rule already announced by this Court in those cases is that where the principal claim made is for injuries to (or death of) an employee, and the award of damages in his favor has been reduced in proportion to the amount of his own negligence, the employee's negligence may not be imputed to his employer for purposes of determining the existence of, or amount of, contribution owed by his employer.[2]
 
 
 45
 This is such a case. It is true that Union was not solely negligent in the premises. It ought not be required, when all litigation has ended, to pay more than the proportion of total damages represented by its portion of the total negligence. The application of the comparative negligence test, in this case, has already seen to it that Union pays no more than its fair share of the total loss. There is no reason for contribution; contribution has been received in the reduction of the damages.
 
 
 46
 The rule painstakingly developed in Loffland will bring just and satisfying results no matter how the negligence be split up among the employee/plaintiff, his employer, and the defendant. Let us suppose that Derouen's negligence was not the only negligence attributable to Loomis and that the total damage was a sum of $100,000.00. The percentages of actionable negligence can be determined by the jury. If, in this case, Derouen had been charged with 30 percent of the negligence; his employer, Loomis, with 10 percent not attributable to Derouen; and the defendant Union with 60 percent of the negligence, the contribution of each party to the satisfaction of the total damages would be a simple mathematical computation. The plaintiff, Derouen, would have the $100,000.00 total damages reduced 30 percent (because of his 30 percent negligence) and recover $70,000.00. That recovery would be against Union who would have a right over against Loomis for contribution. However, the negligence of Derouen would not be attributed to Loomis. Loomis would make contribution (as against the total damages) of 10 percent equalling $10,000.00. Thus, Union would wind up paying $60,000.00 equal to 60 percent of the total $100,000.00 in damages done. See Empire Seafoods, Inc. v. Anderson, 398 F.2d 204 (5th Cir. 1968), cert. denied 398 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444.
 
 
 47
 I believe that this makes sense and does justice.
 
 
 48
 One of the difficulties in arriving at a proper result in cases like the one under consideration is that we see, too often, only one or two trees and lose sight of the forest. Here, the state court action established the total damages and the negligence of the deceased employee. We are now viewing a case that seems to have started with Union as a judgment creditor bringing an action against Loomis a derivatively negligent vessel. There is yet other litigation likely in the future.
 
 
 49
 Under the law, actions for contribution and indemnity need not end with our present case. As the employee and servant of Loomis, the deceased Derouen, was obliged to exercise due care in performing his duties. For the breach of that responsibility he may be held liable to his employer. Inasmuch as the majority now holds that, as a proximate result of his negligence, his employer suffers liability in the amount of $56,319.71, it appears that his employer has a right of action over against him (or his estate) for that figure. Whether or not such actions are commonly brought is of no importance in defining the rights of the parties. Such actions are not, however, so unusual.
 
 
 50
 The rule that an employer is entitled to recover for damages suffered by the tortious performance of the duties of an employee is the established law of Louisiana, in which jurisdiction this misfortune occurred. Brannan v. Hoel, 15 La.Ann. 308 (1860); Costa v. Yochim, 104 La. 170, 28 So. 992 (1900); Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960); Caldwell v. Montgomery Ward & Company, Inc. (La.App.), 271 So.2d 363 (1972).
 
 
 51
 This time-honored rule of law is generally embraced in maritime jurisprudence. See Horton v. Moore-McCormack Lines, Inc., 326 F.2d 104 (2d Cir. 1964); States S. S. Co. v. Rothschild International Steve. Co., 205 F.2d 253 (9th Cir. 1953); Hopson v. M/V Karl Grammerstorf, 330 F.Supp. 1260 (E.D.La.1971); States Steamship Company v. Howard, 180 F.Supp. 461 (D.C.Or.1960); but see Arico v. Cie. De Navegacion Transoceanique, 409 F.2d 1002 (2nd Cir. 1969); McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334 (2nd Cir. 1969); Johnson v. Partrederiet, 202 F.Supp. 859 (S.D.N.Y.1962). In Howard, supra, a maritime case, Judge East observed "this (rule) merely follows the common-law rule that 'a private employer, * * * has a common-law right of indemnity against an employee whose negligence has made the employer liable.' "
 
 
 52
 Thus, when cases of this sort have been finally wrung out, the 40 percent negligent injured (or killed) operator of one vessel will have his award reduced by 64 percent of its full value and the 60 percent negligent adverse vessel will be responsible for only 36 percent of the loss.
 
 
 53
 There is available to us the clear thinking of a Court before which the entire forest was laid out for viewing. In the very district from which the present appeal arises the Honorable Alvin B. Rubin had, for decision, the case of Shiver v. Burnside Terminal Company et al., 392 F.Supp. 1078 (E.D.La.1975). In this case all of the actions (for damages, for contribution, and indemnity master against servant) were asserted. The servant, Shiver, brought action against the adverse vessel (under charter to Burnside) for personal injuries. Burnside thereupon, by third-party complaint, sought contribution from Shiver's employer, Getco, the owner of the ship operated by Shiver. Getco, asserting that if it were liable such liability was imposed upon it solely because of the failure of Shiver to have performed his duties with due care, brought a fourth-party complaint against Shiver to recover any amount for which Getco might be held liable to Burnside. When the District Court in that case arrived at the controlling rule, its task was 90 percent completed. Judge Rubin stated,
 
 
 54
 But Burnside may recover over against Getco only if it can establish some basis for recovery other than the simple imputation of Shiver's negligence to Getco, his employer. This is true because the only damages Burnside has suffered are damages attributable to causes other than Shiver's negligence; that element has already been deducted from the damages due Shiver." (emphasis supplied)
 
 
 55
 392 F.Supp. at 1079.
 
 
 56
 Of course, the District Court in that case was looking prospectively. The apportionment of damages had not yet been made. So, Judge Rubin was required to determine whether or not there could be a successful indemnity action by Getco, the employer, against Shiver, its employee. He reasoned, correctly, I submit, that Burnside would have no claim against Getco unless Getco were found to have been negligent other than through the imputation of Shiver's negligence to it. Therefore, he concluded, there would be no occasion for Getco to be found liable because of the failure of Shiver to have performed his duties carefully. Predicting the situation that presently confronts us, Judge Rubin observed that if Shiver were found, personally, to have been partly at fault, " . . . the damages assessed would be reduced to take his fault into account." Id. Thus, Burnside's claim for contribution for negligence of Shiver would have been satisfied by that reduction. Denouncing the prospect of a recovery over by an employer against his employee in a case such as the one presently before us, the Shiver Court said, " . . . to permit such a recovery would be twice to count his contributory negligence." Id. The majority opinion in our case counts Derouen's negligence twice. It has been used to reduce his survivors' recovery, thus providing contribution to Union. Now, it is to be used to provide Union with further contribution from Loomis. If the majority be correct, Loomis has been held liable to pay a large sum of money because of the negligence of its employee in the performance of his duties and I can see no lawful prospect other than for this negligence to be used for the third time to provide indemnity in favor of Loomis against the estate of Derouen.
 
 
 57
 There is no reason for such a result. When the State proceeding ended, each negligent party had contributed a fair share to the total damage and there is no occasion presented for a contribution action at all.
 
 
 58
 Therefore, I respectfully dissent. I would reverse the judgment of the District Court and require the case to be dismissed.
 
 
 
 [1]
 The motorboat was 16 feet long and was built of fiberglass
 
 
 [2]
 The work being performed on Rig # 5, located on Louisiana inland waters, was pursuant to a "Service Contract" between Union and Loomis, dated December 4, 1966
 The first paragraph of the pertinent article of the "SERVICE CONTRACT" reads as follows:
 "6. INDEMNIFICATION AND INSURANCE CONTRACTOR
 (Loomis) assumes and agrees to hold harmless, indemnify and defend UNION against any and all liability for injuries and damages to CONTRACTOR himself and to CONTRACTOR'S employees, agent, sub-contractors and guests, incident to or resulting from any and all operations performed by CONTRACTOR under any of the terms of this contract.
 This contract goes on further and in specific detail to require Loomis to assume full liability for all damage to Union's equipment, but expressly limits this undertaking to losses resulting from Loomis' negligence and, finally, to carry various types of liability insurance coverage in specified amounts for the protection of it and Union while Loomis is performing its work under the contract."
 
 
 [3]
 This was a 30 foot metal crew boat
 
 
 [4]
 Since the accident occurred at the intersection of two navigable canals, the dispute fell within the admiralty jurisdiction of the United States. However, suit was brought in state court under the Savings to Suiters Clause of the Constitution, which gives state and federal courts concurrent jurisdiction in cases involving maritime personal injury claims based on negligence
 
 
 [5]
 See note 2, supra. Whether by accident or fortuitous prescience the Union defendants were careful not to seek indemnity or contribution under usual maritime tort principles
 
 
 [6]
 The trial court found that Decedent's negligence consisted of entering a blind intersection without sounding a horn and at an excessive rate of speed under the circumstances, well knowing that this particular intersection where the accident occurred was heavily traveled. Nutt's negligence consisted of traveling on the wrong side of the canal and operating the crew boat at an excessive rate of speed under the circumstances, failing to sound a horn on entering the intersection and operating the boat in the manner indicated with cracked and fogged windows
 
 
 [7]
 This suit was consolidated with a suit for damages brought against the same defendants by Strickland, the passenger in the Loomis boat for injuries he suffered as a result of the accident
 
 
 [8]
 In the amount of $56,319.71, or one-half of the amount paid by Union to Decedent's heirs
 
 
 [9]
 See note 15, infra
 
 
 [10]
 Stipulations Numbers 14 and 15 provided:
 
 
 [14]
 
 On the basis of the foregoing, both vessels as a matter of fact and law were negligently operated and the negligence of both proximately caused the collision.
 
 
 [15]
 
 The motorboat being operated by Derouen entered a blind intersection without sounding a horn and at an excessive rate of speed under the circumstances. Derouen had been in this area many times and knew that the intersection was heavily traveled. Knowing this, unable to see because of vegetation and traveling in a motorboat with a cracked windshield, he entered the intersection. The foregoing constituted negligence which was a proximate cause of the collision.
 On the other hand, the crew boat was traveling on the wrong side of the bayou, with cracked and fogged windows and at an excessive rate of speed. Nutt likewise failed to sound a signal before entering the intersection. For these reasons the crew boat was also negligently operated and this negligence constituted a proximate cause of the collision.
 
 
 [11]
 In ruling on a motion for new trial, the Magistrate concluded that "the obvious conclusion from the facts stipulated is that LOOMIS is vicariously liable under the doctrine of respondeat superior for the torts of its employee." The District Court adopted all of the Magistrate's findings of fact and conclusions of law
 
 
 [12]
 The Court below distinguished Empire (correctly, we think) on the ground that the employer/bridge owner in that case was held to be negligent in his own right, apart from any negligence which might be imputed to him from his employees
 
 
 [13]
 Union also relies on Weyerhaeuser Steamship Company v. United States, 1963, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1, 1963 A.M.C. 846; and upon Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed.2d 318, 1952 A.M.C. 1; for the proposition that personal injury awards, either by way of settlement or judgment against one of the two offending vessels, are to be included in the measure of damages to be allocated between both offending vessels in a mutual fault-divided damages situation
 
 
 [14]
 United States v. Reliable Transfer, 1975, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251, 1975 A.M.C. 541
 
 
 [15]
 See App., at 45-48, 68-73
 
 
 [16]
 Drewery is also distinguishable on the ground that it is not a collision case. See text at note 18, infra
 
 
 [17]
 We "have held that the Ryan (WWLP) doctrine (Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133) is closely tied to a vessel and this obligation which the shipowner owes to those employed on the vessel. * * * We are accordingly extremely hesitant to extend the burdensome Ryan doctrine to situations not substantially similar to those which gave birth to the doctrine. The obligations which the owner of an offshore drilling platform owes to those employed on it are not sufficiently similar to those owed by a shipowner to a seaman to permit the extension of the doctrine." Id. at 549
 
 
 [18]
 Significantly, in the light of Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, 1969 A.M.C. 1082, which held that federal maritime law does not apply to offshore platforms in the Outer Continental Shelf, Loffland turns out to be just the equivalent of a Louisiana case applying Louisiana surrogate law. See also Executive Jet Aviation, Inc. v. City of Cleveland, 1972, 409 U.S. 249, 258-59, 93 S.Ct. 493, 34 L.Ed.2d 454, 1973 A.M.C. 1; Chevron Oil Co. v. Huson, 1971, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, 1972 A.M.C. 20, reversing in part Huson v. Chevron Oil Co., 5 Cir., 1970, 430 F.2d 27. Loffland should not therefore control a case which by every test is a blue water maritime controversy subject exclusively to federal maritime law
 
 
 [19]
 See, e. g., Weyerhaeuser Steamship Co. v. United States, supra ; The Chattahoochee, 1899, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801
 
 
 [20]
 See note 18, supra
 
 
 [21]
 Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 A.M.C. 698; Ryan Stevedoring Co. v. Pan-Atlantic SS Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9; Reed v. S.S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, 1963 A.M.C. 1373; Italia Societa v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732, 1964 A.M.C. 1075
 
 
 [22]
 By the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. § 901 et seq
 
 
 [23]
 See, e. g., LeBlanc v. Two-R Drilling Co., 5 Cir., 1976, 527 F.2d 1316, 1976 A.M.C. 303; Julian v. Mitsui O.S.K. Lines, Ltd., 5 Cir., 1973, 479 F.2d 432, 1973 A.M.C. 1477; D/S Oves Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 1966 A.M.C. 2223; United States Lines Co. v. Williams, 5 Cir., 1966, 365 F.2d 332, 1966 A.M.C. 2418; Lusich v. Bloomfield Steamship Co., 5 Cir., 1966, 355 F.2d 770, 1966 A.M.C. 191
 
 
 [24]
 See, e. g., United States Lines, Inc. v. Jarka Co., 4 Cir., 1971, 444 F.2d 26, 1971 A.M.C. 1351; McLaughlin v. Trelleborgs Angfartygs A/B, 2 Cir., 1969, 408 F.2d 1334, 1969 A.M.C. 1387, cert. denied sub nom., Golten Marine Company v. Trelleborgs Angfartygs A/B et al., 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464; Vaccaro v. Alcoa S/S Co., 2 Cir., 1968, 405 F.2d 1133, 1969 A.M.C. 503; Arista Cia. DeVapores, S.A. v. Howard Terminal, 9 Cir., 1967, 372 F.2d 152, 1967 A.M.C. 312; Mortensen v. A/S Glittre, 2 Cir., 1965, 348 F.2d 383, 1965 A.M.C. 2016; Damanti v. A/S Inger, 2 Cir., 1963, 314 F.2d 395, 1963 A.M.C. 852. See also Gilmore & Black, the Law of Admiralty 446 (2d ed. 1975)
 
 
 [25]
 "The operation of the rule was described in The Sapphire, 18 Wall 51, 56, 21 L.Ed. 814:
 'It is undoubtedly the rule in admiralty that where both vessels are in fault the sums representing the damage sustained by each must be added together and the aggregate divided between the two. This is in effect deducting the lesser from the greater and dividing the remainder * * *. If one in fault has sustained no injury, it is liable for half the damages sustained by the other, though that other was also in fault.'
 Similarly, in The North Star, 106 U.S. 17, 22, 1 S.Ct. 41, 45, 27 L.Ed. 91, the rule was thus stated:
 '(A)ccording to the general maritime law, in cases of collision occurring by the fault of both parties, the entire damage to both ships is added together in one common mass and equally divided between them, and thereupon arises a liability of one party to pay to the other such sum as is necessary to equalize the burden.' " Reliable Transfer, supra, at 400 n. 1, 95 S.Ct. at 1710.
 
 
 [26]
 Under the old Divided Damages rule, personal injury awards, either by way of settlement or judgment against one of the two offending vessels, were to be included in the measure of damages to be allocated between both offending vessels in a mutual fault-divided damages situation. See note 6, supra. In light of the Supreme Court's general and vociferous criticism of the Divided Damages rule in Reliable Transfer, we are certain that the Court's phrasing of its holding in terms of "property damage" does not foreclose application of comparative negligence principles when personal injury awards are at stake. Claims for personal injury and death to crew members or outside third parties have always gone into the total losses incurred for striking the North Star balance. What the Court in Reliable Transfer was doing was freeing courts from the anachronism of the 50/50 deadhand
 
 
 [27]
 Nor is this result at all unjust. If the collision between Loomis' boat and Union's boat had injured a third party, the negligence of the operator of Loomis' boat would be imputed to Loomis, and Loomis would have to bear its proportionate share of the damages caused by the collision. Cf. Standard Oil Co. v. Anderson, supra. To change this result simply because the Loomis operator's negligence contributed to his own death would be arbitrary and contrary to the basic principles underlying tort law
 
 
 [1]
 In the state trial court, it was determined that the total damages suffered by decedent were $145,000.00. This sum was reduced by 40 percent to reflect the comparative negligence of the decedent, yielding a sum of $87,000.00. The sum of $112,639.42 reflects the amount of interest and costs awarded to the decedent's heirs as well as a sum of $1,000.00 plus interest and costs awarded to Loomis and a sum of $630.55 plus interest and costs awarded to The Home Insurance Co
 
 
 [2]
 While contribution is the relief sought in the instant case rather than contractual or tortious indemnity as was sought in the Drewery and Loffland cases, this distinction is of no consequence. The common issue, preliminary to the determination of whether or not a "right over" against the adverse party exists, is whether or not the negligence of an employee may be imputed to the employer, under the doctrine of respondeat superior, after being initially discounted in the employee's personal injury case through application of the comparative negligence doctrine